WARNER, J.
The estate of a former patient sued a mental facility and its attending psychiatrist for wrongful death of the patient. Although the third amended complaint alleged ordinary negligence, the trial court dismissed it because the complaint was for medical negligence, and the presuit requirements of Chapter 766, Florida Statutes, had not been met. We affirm, concluding that the complaint was essentially for medical negligence.
According to the factual allegations in the third amended complaint, Michael Taime, who had previously been diagnosed as paranoid schizophrenic, was “Baker Acted” by the Fort Lauderdale Police Department for suicidal ideations and bizarre behavior on July 16, 2010. At the time he was transported to the hospital, he was hearing voices and hallucinating, and told a nurse that he had a suicide plan to take pills to kill himself. Dr. Antoine, a licensed psychiatrist, was given the responsibility for the care and treatment of Taime. The complaint specifically alleged that Dr. Antoine’s care and treatment of Taime did not fall below the medical standard of care, and the action was not based on medical malpractice.
The complaint alleged that Dr. Antoine had Taime sign a consent form for voluntary admission to the facility, as opposed to involuntary admission, solely for the convenience of the doctor and facility, allowing it to avoid Baker Act hearings and to keep the State out of Taime’s care and treatment.[1] The form was attached to the third amended complaint. It included a certification by the doctor that he had personally examined Taime and concluded that he was competent to provide express and informed consent. Based upon these forms, Taime was admitted. At some point his mother requested that should he be released, he be placed with a family member or in a safe house upon discharge.
Thirteen days later, Taime was discharged from the hospital, given his money, a taxi cab voucher, and prescriptions for his medications. The complaint alleges that there was no negligence in the decision to discharge Taime or in prescribing medication. Taime took the prescriptions to a drug store to get them filled. A day later, Taime was found dead of an overdose of medication.
The complaint alleged a cause of action for negligence of Dr. Antoine for providing “false” documents which allowed Taime’s voluntary admission to the facility which allowed his release without notifying family members, which directly led to his death. Secondly, it alleged a cause of action for abuse of a vulnerable adult pursuant to section 415.111, Florida Statutes (2010). It alleged that Dr. Antoine was a caregiver and the hospital was a facility under the Baker Act. They breached their duty of care through the false consent form, which prevented the protections of the Baker Act from being applied, and discharged Taime without providing safety precautions. Again, they alleged that this was not an action based upon medical malpractice.
The defendants moved to dismiss the third amended complaint, contending that, despite its claims to the contrary, the action was based on medical negligence without compliance with presuit conditions. The trial court agreed and dismissed the *127 complaint with prejudice. This appeal follows.
A ruling on a motion to dismiss for failure to state a cause of action is a ruling of law which is reviewable on appeal under the de novo standard of review. Regis Ins. Co. v. Miami Mgmt., Inc., 902 So.2d 966, 968 (Fla. 4th DCA 2005). When ruling on a motion to dismiss, the trial court is limited to the four corners of the complaint, but this includes the exhibits attached to it. See Abele v. Sawyer, 750 So.2d 70, 74 (Fla. 4th DCA 1999). Where the exhibits negate the cause of action asserted, they must control. See Fladell v. Palm Beach Cty. Canvassing Bd., 772 So.2d 1240, 1242 (Fla.2000).
The Estate claims that its complaint is not based upon medical negligence, thus not requiring compliance with the medical malpractice statutes. It points to the consent form signed by Taime, which it alleges was orchestrated by the doctor to avoid involuntary commitment procedures, the lack of which directly led to Taime’s suicide. However, it overlooks the fact that attached to the complaint is the certification of the doctor that he personally evaluated Taime and found him competent to consent to treatment. Thus, it was Dr. Antoine’s medical evaluation which led to the consent form, without which Taime would not have been admitted on a voluntary basis. Because he was found to be competent, he could not be admitted on an involuntary basis. The complaint does not allege that Taime was incapable of consenting or that he met the criteria for involuntary placement, which in- and of itself would be. a medical diagnosis. At its core, then, the claim is one of involving medical judgment and thus would constitute an allegation of malpractice if the doctor had improperly found him competent to consent to voluntary admission to the facility.
Aside from the foregoing, the complaint also alleges that there was no negligence in the decision to discharge Taime after his admission or in prescribing the medication, the overdose of which apparently led to Taime’s death. At the time of his death, Taime was not in the custody or control of the facility. If there was ho negligence in discharging him, then he was entitled to be discharged, and there was no necessity for a hearing under the Baker Act. See Tuten v. Fariborzian, 84 So.3d 1063, 1065-66 (Fla. 1st DCA 2012). As the facility has no common law duty to protect a patient once he has left its custody and control, the complaint fails to state a cause of action for liability of the facility and the doctor. Id.; see also Surloff v. Regions Bank, 179 So.3d 472, 476 (Fla. 4th DCA 2015) (noting that, there is no liability for another’s suicide unless a special duty of care is assumed by taking care and custody of the person).[2]
As to the count alleging a violation of section 415.1111, Florida Statutes (2010), we agree with appellees that Chapter 415 does not apply in this instance. Other than merely stating that the doctor is a caregiver, there were no allegations to show that the doctor and facility were “caregivers” within the meaning of section 415.102(5), Florida Statutes (20Í0), which defines “caregiver” as a person “who has been entrusted with or has assumed the responsibility for frequent' and regular care of or services to a vulnerable adult on *128 a temporary or permanent basis and who has a commitment, agreement, or understanding with that person or that person’s guardian that a caregiver role exists.” (Emphasis added). Taime was in the facility for treatment of a medical condition, namely his mental illness. See Tenet S. Fla. Health Sys. v. Jackson, 991 So.2d 396, 399 (Fla. 3d DCA 2008); Bohannon v. Shands Teaching Hosp., 983 So.2d 717 (Fla. 1st DCA 2008). Secondly, the determination to discharge Taime, which was not negligent according to the complaint, was an exercise of medical judgment, as a facility is required to discharge a voluntary patient when that patient' has “sufficiently improved so that retention in the facility is no longer desirable[.]” See § 394.4625(2)(a)l., Fla. Stat. (2010). Moreover, the facility’s caregiver role, if any, would have ended with the discharge of the patient because he had improved to the point that he did not need to be in the facility.
Because the complaint is based upon medical malpractice, the court properly dismissed it for failure to comply with the Medical Malpractice Act. We affirm the final order.
CIKLIN, C.J., and GERBER, J., concur.

. In earlier versions of the complaint, the Estate alleged that Taime's signature had been forged. This allegation is not present in the third amended complaint. Instead, the complaint alleges that Dr. Antoine had Taime execute the consent form, and Dr. Antoine falsely "verified" it. There is no verification on the consent form. The doctor signed a “Certification of Person's Competence To Provide Express and Informed Consent.”

. The Estate mentions the facility’s promise to the decedent's mother to notify her upon his discharge and ties this to the facility’s negligence in its discharge (although, and somewhat significantly, it doesn’t allege that the family was not notified at discharge), but it does not argue that the facility had any duty pursuant to the undertaker doctrine. See Wallace v. Dean, 3 So.3d 1035 (Fla.2009). Therefore, we do not consider it.