DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**LLANO FINANCING GROUP, LLC,**
Appellant,

v.

**ROGER YESPY,** individual, and **GULFSTREAM APPRAISAL COMPANY,**
an inactive Florida corporation,
Appellees.

No. 4D16-2007

[August 23, 2017]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Cheryl Caracuzzo, Judge; L.T. Case No. 2015CA010747.

Robert J. Hauser of Pankauski Hauser PLLC, West Palm Beach, for appellant.

Scott A. Cole and Daniel M. Schwarz of Cole Scott & Kissane, P.A., Miami, and Thomas L. Hunker of Cole, Scott & Kissane, P.A., Fort Lauderdale, for appellee Roger Yespy.

MAY, J.

This is a case of the missing link—the claim servicer's standing to pursue negligence claims against a property appraiser. A third-party claim servicer appeals an order dismissing its amended complaint against an individual and his company for negligence in the appraisal of the mortgaged property. It argues the trial court erred in dismissing the amended complaint with prejudice. We disagree and affirm.

The claim servicer filed a complaint against the property appraiser[1] for professional negligence and false information negligently supplied for the guidance of others. The property appraiser moved to dismiss the complaint, arguing the claim servicer did not have standing, failed to properly assert the causes of action or attach loan documents, and was barred by the statute of limitations. The trial court granted the motion to

---

[1] For ease of reference, we refer to the individual and the company collectively as the property appraiser.

dismiss without prejudice, giving the claim servicer thirty (30) days to amend the complaint.

The claim servicer amended the complaint, and alleged the original lender refinanced a mortgage secured by real property. To obtain the loan, the borrower employed a mortgage broker, who hired the property appraiser to prepare an appraisal for the property. The property appraiser valued the property, and listed the mortgage broker as "Lender/Client."

The appraisal provided for the mortgage broker to *distribute* the report to the borrower, other lenders, the mortgagee or its successors and assigns, and secondary market participants. It also stated: "[t]he borrower, another lender . . . , the mortgagee or its successors and assigns, mortgage insurers, . . . and other secondary market participants may rely on this appraisal report *as part of any mortgage finance transaction* . . . ." (Emphasis added). But, it provided that the intended user is the "lender/client." In a different section, the appraisal stated: "THE CLIENT IS THE INTENDED USER OF THIS REPORT. NO OTHER INTENDED USERS HAVE BEEN IDENTIFIED BY THE APPRAISER."

The original lender subsequently transferred the underlying mortgage to Impac Funding Corporation ("Impac"), which later sold it to Impac CMB Trust Series 2005-1 (the "Trust"). Impac, the Trust, and Deutsche Bank National Trust Company ("Trustee") entered into a master servicing agreement. The parties agreed that Impac would service the loans for the benefit of the Trustee.

The agreement granted Impac the right to file and collect insurance claims, institute lawsuits *relating to delinquent or non-performing mortgage loans within the trust,* and enter into subservicing agreements to delegate duties. Impac entered into a subservicing agreement with Savant LG, LLC ("Savant"), assigning all of its legal rights to assert negligence claims against real estate appraisers and other tortfeasors. However, Impac had never been assigned those rights.

Savant then assigned its rights to the claim servicer. The amended complaint alleged that the claim servicer stood in the shoes of the Trust, which relied upon the appraisal. It alleged that when the foreclosed property was sold, the claim servicer discovered the property's value was substantially less than the appraised value. The claim servicer argued the loss was due to the property appraiser's negligence, including its use of dissimilar comparable properties.

The property appraiser moved to dismiss and strike the amended

2

complaint on the same grounds contained in its original motion to dismiss. The trial court granted the motion with prejudice to the professional negligence count. It found the claim servicer alleged a loss occurred when the property was foreclosed, and the mortgage holder knew or should have known that the appraisal misrepresented the value of the property. The two-year statute of limitations ran ten months before the complaint was filed.

The court dismissed the false information negligently supplied count for the same reasons, finding that the ordinary negligence claim accrued at the time of the negligent act. The trial court entered a final judgment for the property appraiser. The claim servicer now appeals.

While the trial court relied on the statute of limitations defense as the basis for its dismissal of the amended complaint, we affirm on an alternative ground argued by the property appraiser: the claim servicer lacked standing to sue the property appraiser. *See Dade Cty. Sch. Bd. v. Radio Station WQBA*, 731 So. 2d 638 (Fla. 1999).

The claim servicer argues that it properly alleged standing, which is all that Florida Rule of Civil Procedure 1.120(a) requires. It further claims that Impac, who assigned its rights to Savant, which in turn assigned its rights to the claim servicer, is within the class of persons or entities with a cause of action under Restatement (Second) of Torts § 552 (Am. Law. Inst. 1977). Lastly, it argues that the complaint can be amended.

The property appraiser responds that the amended complaint and exhibits establish the claim servicer lacked standing to file suit. It argues the amended complaint failed to allege that Impac or the claim servicer were ever assigned the original lender's rights to sue the property appraiser for negligence. Nor does the claim servicer have a claim under section 552, as it was not an intended user of the appraisal. We agree with the property appraiser on both points.

We have de novo review. *Equity Premium, Inc. v. Twin City Fire Ins. Co.*, 956 So. 2d 1257, 1259 (Fla. 4th DCA 2007).

"In determining whether to dismiss a complaint for lack of standing, we must confine our review to the four corners of the complaint, draw all inferences in favor of the pleader, and accept all well-pled allegations in the complaint as true." *Gordon v. Kleinman*, 120 So. 3d 120, 121 (Fla. 4th DCA 2013) (quoting *Wheeler v. Powers*, 972 So. 2d 285, 288 (Fla. 5th DCA 2008)). In determining whether a party has standing, the court must determine "whether the plaintiff has a sufficient interest at stake in the

3

controversy which will be affected by the outcome of the litigation." *Wexler v. Lepore*, 878 So. 2d 1276, 1280 (Fla. 4th DCA 2004).

The claim servicer's argument that it had only to *allege* standing, and was not required to *prove* standing, under Florida Rule of Civil Procedure 1.120(a) is misplaced. That rule provides:

> It is not necessary to aver the *capacity* of a party to sue or be sued, the authority of a party to sue or be sued in a representative capacity, or the legal existence of an organized association of persons that is made a party, except to the extent required to show the jurisdiction of the court.

(Emphasis added).

Rule 1.120(a) addresses capacity—not standing. Capacity is the absence of a legal disability preventing a party from coming into court. *See Keehn v. Joseph C. Mackey and Co.*, 420 So. 2d 398, 399 n.1 (Fla. 4th DCA 1982). Standing requires a sufficient interest in the outcome of litigation before the court will consider the matter. *Id.*

The claim servicer next argues that lack of standing is an affirmative defense, which the appraiser failed to raise. Many decisions characterize lack of standing as an affirmative defense. *See, e.g., Jaffer v. Chase Home Fin., LLC*, 155 So. 3d 1199, 1202 (Fla. 4th DCA 2015). But, "[i]If the face of the complaint contains allegations which demonstrate the existence of an affirmative defense, then such a defense may be considered on a motion to dismiss." *Papa John's Int'l, Inc. v. Cosentino*, 916 So. 2d 977, 983 (Fla. 4th DCA 2005); *see also* Fla. R. Civ. P. 1.110(d). Here, the complaint's allegations "demonstrate the existence of [the] affirmative [standing] defense" thereby allowing its consideration in the property appraiser's motion to dismiss.

Now that these procedural arguments are resolved, we address the standing issue.

The claim servicer alleged the original lender issued a loan based on a negligent appraisal. The original lender transferred the mortgage to Impac prior to the foreclosure. That agreement granted Impac the right to file and collect insurance claims, institute lawsuits *relating to delinquent or non-performing mortgage loans within the trust*, and enter into subservicing agreements to delegate duties. It did not however assign to Impac the original lender's right to pursue negligence claims.

4

Impac then assigned its rights to Savant, including "all of its legal rights to assert negligence claims against real estate appraisers and other tortfeasors." Savant then assigned those rights to the claim servicer.

The amended complaint and attached assignment did not reveal an assignment of the original lender's right to pursue negligence claims against the property appraiser to Impac. Alleging that the original lender assigned the note and mortgage to Impac is not equivalent to alleging that the original lender assigned its right to pursue negligence claims. *See Ginsberg v. Lennar Florida Holdings, Inc.,* 645 So. 2d 490, 496 (Fla. 3d DCA 1994).

In *Ginsberg*, the assignee of a mortgage and note brought negligence claims for damage to an apartment complex. *Ginsberg*, 645 So. 2d at 495-96. The Third District held that the complaint and its exhibits did not demonstrate that the assignment, which stated that it assigned all rights and interests in the mortgage and related collateral, conveyed the right to assert any cause of action previously held by the assignor, including any tort claims. *Id.* at 496.

Here, while the assignment of the note and mortgage provided Impac with the ability to enforce the note and foreclose on the property, that assignment did not include the right to bring negligence claims. The property appraiser prepared the report for the original lender, not Impac, Savant, or the claim servicer. The amended complaint failed to, and indeed could not in good faith, allege that the original lender assigned those rights to Impac. It therefore did not have the ability to assign those rights to Savant. And, Savant did not have the ability to assign those rights to the claim servicer.

Put simply, the claim servicer was not in privity with the property appraiser, never acquired a right to file negligence claims, and therefore lacked standing to sue for professional negligence.

Nevertheless, the claim servicer argues that Impac had independent standing on behalf of the purchaser of the loan on the open market, regardless of whether the original lender assigned its rights to pursue negligence claims. The claim servicer relies on the Restatement (Second) of Torts § 552 (Am. Law Inst. 1977):

> **§ 552 Information Negligently Supplied for the Guidance of Others**
>
> (1) One who, in the course of his business, profession or

5

employment . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information . . . .

(2) [T]he liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

The claim servicer argues that the property appraiser intended to induce it to rely on the negligent misrepresentation in the appraisal. We disagree.

The Second District provides guidance on this issue. *See Cooper v. Brakora & Assocs., Inc.,* 838 So. 2d 679, 681-82 (Fla. 2d DCA 2003). There, the court held a purchaser did not have a negligent misrepresentation action against an appraiser hired by a bank to evaluate a purchaser's loan. *Id.*

[S]ection 552 will create great uncertainty unless the concept of a business transaction is narrowly defined. Accordingly, the "transaction" associated with an appraisal that is obtained purely for financing purposes after a contract for sale has been executed is the loan transaction. To permit section 552 to create a tort claim against a residential appraiser . . . would expand the meaning of "transaction" beyond that contemplated in the ordinary business relationship within which an appraisal for a lender is performed.

*Id.* at 682.

Similarly, while the original lender could bring an action against the property appraiser for reasonably relying on the appraisal, Impac could not. The appraisal did not provide an independent basis for a third-party to sue for negligence. This is especially true where the contract language limited the appraisal's application.

The appraisal provided for *distribution* to others, but limited reliance on

6

the report to its use for the purpose "*of any mortgage finance transaction.*" (Emphasis added).  It specified the intended user as the "lender/client." And, it indicated that "NO OTHER INTENDED USERS HAVE BEEN IDENTIFIED BY THE APPRAISER."  Thus, both case law and the appraisal's language prohibit justifiable reliance by individuals or entities other than those involved in the mortgage finance transaction.  *See Haslett v. Broward Health Imperial Point Med. Ctr.*, 197 So. 3d 124, 127 (Fla. 4th DCA 2016).

The claim servicer's standing to pursue negligence claims against the property appraiser is missing.  Even accepting the complaint's allegations as true, they do not show the claim servicer's standing, either by assignment or independently, to bring the alleged negligence claims against the property appraiser.

We therefore affirm the dismissal of the claim servicer's amended complaint.[2]

*Affirmed.*

KLINGENSMITH and KUNTZ, JJ., concur.

*     *     *

***Not final until disposition of timely filed motion for rehearing.***

---

[2] Because of our decision on standing, we need not address the statute of limitations and failure to state a claim issues.